# 1

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

FILED
IN THE ESSEX SUPEIOR COURT
AUG 3 2026
THOMAS H. DRISCOLL
CLERK OF COURTS

ESSEX, ss.

JANE DOE, AS THE PARENT AND NEXT FRIEND OF MINOR CHILD, JOHN DOE,

Plaintiff

v.

TOWN OF NAHANT

Defendant.

Civil Action No. 2677CV00980A

## CIVIL COMPLAINT AND JURY DEMAND

### Parties

1. John Doe is a minor individual residing with Jane Doe in Massachusetts.

2. Defendant Town of Nahant has an office located at 280 Nahant Road, Nahant, Massachusetts 01908. The Town of Nahant is the operator of Nahant Public Schools ("NPS"), a public school district in Massachusetts, with one elementary school, the Johnson Elementary School, which serves students from preschool through sixth grade.

### Jurisdiction and Venue

3. The jurisdiction of this Court is lawful and proper as the incidents occurred in Massachusetts.

4. Venue in Essex County is lawful and proper as the plaintiff resides in Essex County.

### Facts Common to All Counts

5. John Doe was a student enrolled at Johnson Elementary School within Nahant Public Schools ("NPS").

6. John Doe started at Johnson Elementary School in approximately September 2021, when he was around three years old.[1]

7. When John Doe was approximately four years old, he was enrolled in the pre-school program at Johnson Elementary School. He participated in the "Lunch Bunch" program offered to preschoolers at this time.

8. At all relevant times, John Doe was entitled to access educational programs and services free from sex-based discrimination under Title IX.

9. John Doe has Specific Learning Disabilities (SLDs) which require an Individualized Education Program (IEP), which NPS was aware of during his enrollment at Johnson Elementary School.

10. Despite being aware of John Doe's disability-related needs and IEP requirements, school personnel repeatedly failed to implement appropriate supports, accommodations, and behavioral interventions

11. Instead of providing him with resources and outlets as required through his IEP curriculum, teachers ignored John Doe's needs.

12. Paraprofessional Barrie Bechtel worked with John Doe during preschools hours and was in charge of the "Lunch Bunch" program. Ms. Bechtel was aware of John Doe's needs, yet she continuously removed John Doe from the general education setting into a staff member's private office.[2]

---

[1] On John Doe's first day of school, he snuck out of the classroom and onto the playground. John Doe remained missing for thirty minutes. Defendant did not notify Jane Doe or Nahant police while John Doe was missing. Jane Doe was told about this incident when she picked up John Doe later that afternoon.

[2] On December 9, 2022, there was an incident between Ms. Bechtel and John Doe. Ms. Bechtel grabbed John Doe's hand, called him a "bad boy," and told John Doe that he could not go home.

13. There is no documentation detailing how John Doe was disruptive during "Lunch Bunch" and why the behaviors may have been so severe as to warrant long periods of time outside of the classroom.

14. About a month or two after starting the "Lunch Bunch" program, Jane Doe discovered that John Doe was frequently napping in the staff member's office due to his behaviors in the classroom.

15. In fact, John Doe was observed in the staff member's office for 1.5 hours at a time.

16. Jane Doe emailed administration stating her concerns regarding John Doe's removal from the classroom and placement into this private office. She was also concerned with the amount of alone time John Doe was spending with this staff member.

17. NPS ignored Jane Doe's concerns and continued sending John Doe to the staff member's office.

18. In late November 2022, John Doe soiled his pants, even though he was fully toilet-trained, and his nanny had to change his clothes. Upon doing so, his nanny noticed irritation and blood on John Doe's anus, and blood in his feces. John Doe also told his nanny and Jane Doe that his "bum hurt."

19. During this same time period, John Doe exhibited strange behaviors such as inserting toys into his bottom during bath time, wanting to bathe more, and unzipping his pants in a sexual nature.

20. On one occasion, while his nanny was sweeping the floor, John Doe took the broomstick and tried to place it into his rectum. John Doe also had visible erections, which was unusual for his age.

21. John Doe also had a decrease in appetite, low energy, an onset of night terrors, and was afraid to go to school.

22. Teachers noted that John Doe had an increase in behavioral outbursts, he was fearless on the playground, more emotional, and tired. He was not his usual happy, carefree self.

23. On December 5, 2022, John Doe told Jane Doe that a staff member at Johnson Elementary School inserted a broomstick into his rectum.[3]

24. John Doe also stated that he saw the staff member's genitals, and the staff member saw John Doe's genitals.

25. This was the same staff member that John Doe was required to spend time with during "Lunch Bunch." It is upon information and belief, that the sexual assaults occurred in this staff member's office.

26. Jane Doe immediately notified NPS administration, the Department of Children and Families, and Nahant police.

27. Jane Doe also brought John Doe to Winchester Hospital and his pediatrician for examination. John Doe was subjected to an STD test. Around this time, and for months following the abuse, John Doe had an increase in nightmares, toileting accidents, and began fecal smearing.

28. John Doe also exhibited a fear of men. John Doe was eventually diagnosed with posttraumatic stress disorder at Boston Children's Hospital and endured months of trauma therapy.

29. John Doe did not return to Johnson Elementary School after he disclosed the abuse to his mother.

---

[3] There was a separate incident on December 9, 2022 with this same staff member putting his hands on John Doe's face in an aggressive manner.

30. The Title IX coordinator for NPS was made aware of John Doe's sexual abuse as late as January 3, 2023.

31. In response, the administration held a school committee meeting that Jane Doe was not informed about.[4]

32. Jane Doe reached out to the former superintendent, Anthony Pierantozzi, in search for guidance on how the school would investigate the abuse as she was not made aware of any Title IX involvement. Mr. Pierantozzi did not respond to Jane Doe's inquiries.

33. Jane Doe asked Defendant to transfer John Doe to another school district, or at the minimum, set up IEP services off school grounds so that his education for the year was not delayed. Defendant ignored her and did not take any remedial actions.

34. As a result, John Doe remained out of school for the remainder of the 2022-2023 academic year with no educational services provided to him by Defendant.

35. In September 2023, NPS staff members tried to "desensitize" John Doe to Johnson Elementary School. Teachers met with John Doe a total of six times at the school's playground.

36. Once it started to become cold outside, the staff members tried to bring John Doe inside the school, but John Doe refused. NPS staff members gave up on their attempts to assist John Doe after this.

37. Upon information and belief, Mr. Pierantozzi requested that the school system not allow special services for John Doe or a school transfer, and if John Doe wanted an education, he would need to return to Johnson Elementary School premises.

38. On February 6, 2024, Boston Children's Hospital wrote a letter that confirmed John Doe should not return to Johnson Elementary School after their evaluation and PTSD diagnosis.

[4] The Title IX investigator was not present for this meeting either.

John Doe's medical team recommended that he be placed in an alternative school setting, such as an out of district placement.

39. NPS did not respond to this recommendation, nor did they take any remedial steps to assist John Doe in pursuing his education.

40. As a result, John Doe remained out of school for the remainder of the 2023-2024 academic year with no educational services provided to him by Defendant.

41. This caused Jane Doe to incur expenses for private educational services for John Doe.

42. Jane Doe paid for private speech and occupational therapy services for John Doe twice a week for 21 months, in addition to enrolling John Doe in a social-emotional needs camp.

43. Per John Doe's IEP at that time, Defendant was required to provide such services to John Doe, even though he was not physically at the school, but they failed to do so.

44. As a direct result of the sexual abuse, Defendant's failure to protect John Doe, and Defendant's refusal to provide alternative educational services following the disclosure of abuse, John Doe experienced substantial educational regression.

a. Prior to the abuse, John Doe was making progress toward the goals and objectives contained within his IEP.

b. Following the abuse and Defendant's refusal to provide educational services outside of Johnson Elementary School, John Doe missed substantial portions of his education and was unable to access the special education services required by his IEP.

c. Defendant knew that John Doe suffered from trauma-related symptoms, including anxiety, fear of school, behavioral dysregulation, toileting accidents, nightmares, and post-traumatic stress disorder.

d. Defendant further knew that these conditions prevented John Doe from safely returning to Johnson Elementary School and that medical providers recommended placement in an alternative educational setting.

e. Despite such knowledge, Defendant failed and refused to provide alternative educational services, failed to provide an out-of-district placement, failed to provide home-based services, and failed to otherwise ensure that John Doe continued to receive a free and appropriate public education.

f. As a result, John Doe suffered educational deprivation, academic delay, regression in previously acquired skills, emotional distress, and ultimately was required to repeat a grade level upon re-entering public school.

45. On May 21, 2024, Jane Doe received a letter from the NPS Title IX coordinator, Cheryl Dilisio.

46. Shortly thereafter, Ms. Dilisio was removed as the Title IX coordinator and the school appointed Mary DiGuardia as the new coordinator.

47. Ms. DiGuardia did not have any prior experience in handling Title IX investigations.

48. Ms. DiGuardia was also unresponsive to Jane Doe's inquiries.

49. A Title IX investigation was not conducted by Defendant until superintendent Robert Liebow took office in July 2024. This was 18 months after the school system was first notified of the abuse.

50. However, this investigation was rushed and never fully completed.

51. The reason for this hasty investigation was to permit John Doe to enroll in the Swampscott Public School system for the 2024-2025 school year.

52. Once John Doe was allowed into a different town's school system, Defendant's Title IX investigation ended there.

53. Defendant's failure to implement supportive measures, provide alternative educational services, provide an alternative placement, or otherwise restore John Doe's access to education following the disclosure of abuse caused John Doe to remain without meaningful educational services from January 2023 through September 2024.

54. John Doe's inability to return to Johnson Elementary School for *20 months* caused him to be held back a year when he finally transferred to the Swampscott school system in September 2024.

55. Unfortunately, John Doe's transition to Swampscott did not go smoothly.

56. After an incident in class, John Doe became very emotional and scared. When the teacher asked John Doe why he was so upset, he stated that he was afraid to be removed from the classroom.

57. John Doe had a severe emotional reaction to the thought of being removed from the classroom, so much so that Jane Doe had to pick him up from school.

58. This situation not only illustrates the trauma that John Doe endured while at Johnson Elementary School, but also that Defendant failed to properly inform Swampscott of the Title IX investigation involving John Doe.

59. Today, John Doe continues to have cognitive delays resulting from the mental and emotional trauma of the sexual assault. He also continues to have academic impairments that were exacerbated by Defendant's removal of his educational opportunities.

**COUNT I**
**NEGLIGENCE**
**(M.G.L c. 258)**

60. Plaintiff repeats the allegations set forth above as if fully contained herein.

61. Defendant had a duty to provide a safe and secure environment for their students. This duty encompasses ensuring the physical safety of students, maintaining a secure learning environment, and protecting students from foreseeable harm.

62. Defendant's duty of care extended to the minor children they provided care to.

63. Defendant negligently breached its duty to John Doe by, among other things:

a. failing to adequately supervise school personnel;

b. permitting school personnel to isolate John Doe from the general educational environment without appropriate monitoring;

c. failing to adequately train staff regarding student safety, Title IX obligations, and the protection of vulnerable students;

d. failing to properly investigate reports and warning signs concerning John Doe's treatment at school;

e. failing to implement appropriate safeguards for students receiving special education services;

f. failing to provide reasonable educational accommodations and services following the disclosure of abuse; and

g. otherwise failing to protect John Doe from foreseeable harm while under Defendant's care and supervision.

64. Defendant knew or should have known that permitting a preschool-aged special education student to spend substantial periods of time alone in a private office with a staff member, despite parental concerns and without adequate supervision or monitoring, created a foreseeable risk of harm.

65. As a direct and proximate result of such negligence, John Doe suffered and continues to suffer injuries, pain and suffering, and emotional distress.

**COUNT II**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

66. Plaintiff repeats the allegations set forth above as if fully contained herein.

67. Defendant owed John Doe a duty to exercise reasonable care in providing a safe educational environment, protecting students from foreseeable harm, supervising school personnel, and ensuring that students under Defendant's care were not subjected to abuse, neglect, or other dangerous conditions.

68. Defendant breached its duty of care through the negligent acts and omissions described herein, including but not limited to its failure to adequately supervise school personnel, failure to protect John Doe from foreseeable harm, failure to appropriately respond to reports and warning signs concerning John Doe's treatment, and failure to provide reasonable educational and supportive services following the disclosure of abuse.

69. Defendant knew or should have known that its conduct created an unreasonable risk of causing emotional distress to John Doe.

70. As a direct and foreseeable result of Defendant's negligence, John Doe suffered severe emotional distress.

71. John Doe's emotional distress was manifested through objective physical and behavioral symptoms, including but not limited to:

a. post-traumatic stress disorder diagnosed by Boston Children's Hospital;

b. nightmares and night terrors;

c. toileting accidents despite previously being toilet trained;

d. fecal smearing;

e. fear of attending school;

f. fear of male adults;

g. behavioral dysregulation and emotional outbursts;

h. anxiety and hypervigilance;

i. decreased appetite and low energy;

j. cognitive delays and academic regression; and

k. the need for extensive trauma-focused therapy and mental health treatment.

72. The emotional distress suffered by John Doe was serious, severe, and of a nature that a reasonable person would be unable to adequately cope with under the circumstances.

73. The emotional distress suffered by John Doe was accompanied by objective evidence and physical manifestations sufficient to guarantee the genuineness of his claimed emotional harm.

74. As a direct and proximate result of Defendant's conduct, Plaintiff suffered and continues to suffer severe emotional distress, psychological injury, medical expenses, educational losses, pain and suffering, loss of enjoyment of life, and other compensable damages.

**COUNT III**
**SEXUAL HARASSMENT IN EDUCATION**
**(M.G.L c. 214, § 1C)**

75. Plaintiff repeats the allegations set forth above as if fully contained herein.

76. At all relevant times, John Doe was a minor child, approximately four years of age, enrolled as a student at a public elementary school operated by Defendant, and therefore a person entitled to be free from sexual harassment in an educational setting pursuant to M.G.L c. 214, § 1C.

77. At all relevant times, Defendant owned, operated, controlled, supervised, and was responsible for the administration, staffing, policies, and student safety within the Johnson Elementary School, including supervision of its employees and agents.

78. At all relevant times, the individual identified as "staff member" contained herein was an employee, agent, or apparent agent of Defendant acting within the scope of his employment and under the authority, control, and supervision of the Defendant.

79. John Doe was repeatedly removed during the school day from the supervised "Lunch Bunch" program and taken to a secluded school office and/or other private setting within the school building under the direction, facilitation, and/or acquiescence of the staff member described above.

80. In those secluded settings, the staff member engaged in unlawful and unwelcomed sexual conduct toward John Doe, including sexual abuse and/or sexual touching, and other conduct of a sexual nature directed at a minor child.

81. The conduct described above was severe, repeated, and egregious. It occurred within the school environment during the school day, in areas controlled by Defendant, and involved the exploitation of Defendant's supervisory structure and access to young students.

82. The conduct created a hostile and abusive educational environment that deprived John Doe of the right to safety, security, and equal access to educational programming and school services.

83. Defendant knew or should have known of the staff member's conduct, including but not limited to the repeated removal of a four-year-old student to a secluded office, and failed to take prompt, adequate, and effective action reasonably calculated to prevent abuse, protect John Doe, or supervise the staff member.

84. Defendant's failures include, but are not limited to:

a. negligent supervision of staff and students;

b. failure to enforce appropriate boundaries and monitoring protocols for one-on-one adult-student interactions;

c. failure to investigate or respond to red flags arising from repeated private removals of a young child;

d. failure to implement safeguards to prevent sexual misconduct in secluded or unsupervised school settings.

85. As a direct and proximate result of the sexual harassment and abuse, and Defendant's failure to prevent and/or remedy the same, John Doe suffered severe and lasting injuries, including but not limited to: emotional distress, trauma, fear, and psychological harm; developmental and educational disruption; loss of educational opportunity and safe access to school programming; and other consequential damages.

86. John Doe is entitled to all available relief under M.G.L. c. 214, § 1C, including injunctive relief, compensatory damages, attorneys' fees and costs.

**COUNT IV**
**VIOLATION OF TITLE IX**
**(20 U.S.C. § 1681 ET SEQ.)**

87. Plaintiff repeats the allegations set forth above as if fully contained herein.

88. At all relevant times, Defendant operated Johnson Elementary School and Nahant Public Schools and was subject to the requirements of Title IX.

89. John Doe was a student participating in an educational program operated by Defendant and was entitled to educational opportunities free from sex-based discrimination, sexual harassment, and sexual abuse.

90. During his enrollment at Johnson Elementary School, John Doe was sexually abused by a school staff member.

a. At all relevant times, the staff member who sexually abused John Doe was an employee of Defendant and was entrusted with supervisory authority over students, including John Doe.

b. Defendant authorized the staff member to supervise, monitor, discipline, and interact with students during the school day and during the "Lunch Bunch" program.

c. The staff member regularly exercised authority over John Doe when John Doe was removed from the general educational setting and placed in his private office away from other students and staff.

d. The sexual abuse occurred while the staff member was exercising school-conferred authority over John Doe and during the course of activities arising from the staff member's role within Johnson Elementary School.

e. As a young child and special education student, John Doe was particularly vulnerable to abuse by school personnel and dependent upon Defendant to ensure his safety while entrusted to Defendant's care.

f. Defendant knew or should have known that permitting a school employee to repeatedly isolate a preschool-aged student in a private office without adequate monitoring created an unreasonable risk of harm to the student.

91. Defendant received actual notice of the sexual abuse no later than December 2022, when Jane Doe reported the abuse to school administration and other authorities. The report was made to school administrators possessing authority to institute corrective measures on behalf of Defendant.

92. Upon receiving actual notice of the reported sexual abuse, Defendant had a duty under Title IX to respond promptly and in a manner that was not deliberately indifferent to known acts of sex-based harassment and abuse.

93. Defendant acted with deliberate indifference to known acts of sexual abuse by, among other things:

a. failing to promptly initiate a Title IX investigation;

b. failing to conduct a timely, thorough, and impartial investigation into the allegations of sexual abuse;

c. failing to adequately communicate with Jane Doe regarding the status of the investigation and Defendant's response to the allegations;

d. delaying any meaningful Title IX response and investigation for approximately eighteen months after receiving notice of the abuse, while

simultaneously failing to implement measures necessary to preserve John Doe's access to educational opportunities;

e. failing to implement appropriate supportive measures for John Doe after learning of the abuse;

f. failing to take reasonable steps to restore John Doe's access to educational opportunities following the disclosure of abuse; and

g. otherwise failing to respond appropriately to known allegations of sexual abuse involving one of its students.

94. Defendant further knew that, as a result of the sexual abuse, John Doe was unable to safely return to Johnson Elementary School.

95. Defendant knew that John Doe suffered significant trauma-related symptoms, including anxiety, fear of school, behavioral dysregulation, nightmares, toileting accidents, and post-traumatic stress disorder.

96. Defendant further knew that John Doe's medical providers recommended that he not return to Johnson Elementary School and instead receive educational services in an alternative educational setting.

97. Despite such knowledge, Defendant failed to provide alternative educational services, failed to provide an appropriate alternative placement, failed to facilitate a transfer, failed to provide adequate supportive measures, and failed to otherwise ensure that John Doe continued to receive meaningful access to educational opportunities.

98. As a result of Defendant's deliberate indifference, John Doe was deprived of educational opportunities and benefits for an extended period of time, was unable to access

educational services to which he was entitled, experienced educational regression, and ultimately was required to repeat a grade.

99. Defendant's deliberate indifference to known acts of sexual abuse and its failure to restore John Doe's equal access to education effectively excluded him from participation in, denied him the benefits of, and subjected him to discrimination under Defendant's educational programs on the basis of sex.

100. As a direct and proximate result of Defendant's conduct, John Doe suffered severe emotional distress, psychological injury, educational deprivation, academic delay, medical expenses, loss of educational opportunities, pain and suffering, and other compensable damages.

## COUNT V
## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT
## (42 U.S.C. § 12132)

101. Plaintiff repeats the allegations set forth above as if fully contained herein.

102. At all relevant times, Defendant Town of Nahant was and is a "public entity" within the meaning of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(1), in that it is a political subdivision of the Commonwealth of Massachusetts that operates and administers Nahant Public Schools, including Johnson Elementary School.

103. At all relevant times, John Doe was and is an individual with a disability within the meaning of 42 U.S.C. § 12102.

104. John Doe has Specific Learning Disabilities (SLDs) that substantially limit one or more major life activities, including but not limited to learning, reading, concentrating, thinking, and communicating.

105. John Doe is a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12131(2) in that he, with or without reasonable modifications, met the essential eligibility requirements for participation in Defendant's educational programs and services.

106. At all relevant times during his enrollment at Johnson Elementary School, John Doe was eligible for and entitled to receive special education services pursuant to an Individualized Education Program (IEP) designed to address his disability-related needs.

107. Defendant denied John Doe the benefits of its services, programs, and activities on the basis of his disability by:

a. Failing to provide John Doe with the resources, outlets, and supports required by his IEP curriculum;

b. Ignoring John Doe's disability-related needs despite being aware of those needs and the IEP requirements;

c. Repeatedly removing John Doe from the general education setting into a staff member's private office without implementing appropriate supports, accommodations, and behavioral interventions as required by his IEP;

d. Failing to provide a safe educational environment that protected John Doe from foreseeable harm while receiving services under his IEP;

e. Refusing to provide John Doe with reasonable modifications and alternative educational placements or services after learning that he could not safely return to Johnson Elementary School due to trauma resulting from sexual abuse that occurred while he was receiving educational services;

f. Refusing to provide home-based services, out-of-district placement, or other alternative educational services despite medical recommendations that John Doe not return to Johnson Elementary School;

g. Failing to provide John Doe with speech and occupational therapy services as required by his IEP during the 20-month period from January 2023 through September 2024;

h. Conditioning John Doe's access to educational services on his physical return to Johnson Elementary School despite knowing that such return was medically contraindicated and would cause him severe emotional and psychological harm;

i. Failing to ensure that John Doe continued to receive a free and appropriate public education following the disclosure of abuse in December 2022; and

j. Otherwise excluding John Doe from participation in and denying him the benefits of Defendant's educational programs, services, and activities on the basis of his disability.

108. As a direct result of Defendant's conduct, John Doe was deprived of meaningful access to educational opportunities and benefits from January 2023 through September 2024, a period of approximately 20 months.

109. Defendant's denial of services, refusal to provide reasonable modifications, and exclusion of John Doe from educational programming occurred because of and on the basis of John Doe's disability.

110. Defendant knew that John Doe suffered from disability-related conditions including Specific Learning Disabilities, post-traumatic stress disorder, anxiety, fear of school, behavioral dysregulation, toileting accidents, nightmares, and trauma-related symptoms that prevented him from safely returning to Johnson Elementary School.

111. Defendant further knew that John Doe's medical providers, including Boston Children's Hospital, diagnosed him with post-traumatic stress disorder and recommended that he not return to Johnson Elementary School and instead receive educational services in an alternative educational setting.

112. Despite such knowledge, Defendant failed and refused to provide the reasonable modifications necessary to ensure John Doe's continued access to educational programming, including but not limited to alternative placements, out-of-district placements, home-based services, and delivery of IEP-mandated services in settings other than Johnson Elementary School.

113. Defendant acted with deliberate indifference to John Doe's federally protected rights under Title II of the Americans with Disabilities Act.

114. Defendant's deliberate indifference is evidenced by, among other things:

a. Defendant's actual knowledge of John Doe's disability and the accommodations and services required by his IEP;

b. Defendant's actual knowledge that John Doe could not safely return to Johnson Elementary School due to trauma-related symptoms and medical recommendations against such return;

c. Defendant's refusal to take reasonable steps to provide alternative educational services or placements despite repeated requests from Jane Doe and recommendations from medical providers;

d. Defendant's insistence that John Doe return to Johnson Elementary School premises as a condition of receiving educational services, despite knowing such return was medically contraindicated;

e. Defendant's failure to provide any meaningful educational services to John Doe for 20 months, causing him to remain entirely without schooling for the remainder of the 2022-2023 academic year and the entirety of the 2023-2024 academic year;

f. Defendant's failure to implement its own attempts to facilitate John Doe's return, abandoning efforts after only six sessions when John Doe refused to enter the school building; and

g. Defendant's unreasonable delay in addressing John Doe's educational needs and failure to convene or respond to IEP team meetings to determine appropriate alternative placements.

115. As a direct and proximate result of Defendant's discrimination, exclusion, and deliberate indifference, John Doe suffered and continues to suffer severe harm, including:

a. Educational deprivation and denial of access to educational programming for 20 months;

b. Academic delay, regression in previously acquired skills, and loss of educational progress toward IEP goals;

c. The necessity of repeating a grade level upon re-entry into public school;

d. Severe emotional distress, psychological injury, and exacerbation of trauma-related symptoms;

e. Medical expenses for private speech therapy, occupational therapy, and trauma treatment services that Defendant was obligated to provide;

f. Out-of-pocket expenses incurred by Jane Doe for private educational and therapeutic services;

g. Pain and suffering;

h. Loss of enjoyment of life; and

i. Other compensable economic and non-economic damages.

116. The harm suffered by John Doe was foreseeable and the direct result of Defendant's discriminatory conduct and deliberate indifference to his federally protected rights under Title II of the Americans with Disabilities Act.

**Prayers for Relief**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

i. Enter judgment in John Doe's favor on all counts of the Complaint and award John Doe damages in an amount sufficient to compensate John Doe for his injuries, pain and suffering, emotional distress, medical bills, out of pocket expenses, and attorney's fees together with interest and costs;

ii. Grant such other relief as this Court deems just and proper.

**Jury Demand**

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.

Respectfully submitted,
PLAINTIFF,
By her attorneys,

Matthew J. Fogelman (BBO# 653916)
mjf@fogelmanlawfirm.com

Jeffery M. Simons (BBO# 688665)
jms@fogelmanlawfirm.com
Jillian J. Dahrooge, Esq. (BBO # 709087)
jjd@fogelmanlawfirm.com
FOGELMAN LAW LLC
7 Wells Avenue, Suite 23
Newton, MA 02459
617-559-1530

Dated: July 30, 2026

2

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 2677CV00980A | Massachusetts Trial Court Superior Court |
|---|---|---|
| | | COUNTY Essex |

| | |
|---|---|
| Plaintiff Jane Doe as parent and next friend of minor child John Doe | Defendant: Town of Nahant |
| ADDRESS: Massachusetts | ADDRESS: 280 Nahant Road, Nahant, MA 01908 |
| Plaintiff Attorney: Jeffrey Simons, Jillian Dahrooge | Defendant Attorney: |
| ADDRESS: Fogelman Law, 7 Wells Ave, Suite 23, Newton, MA 02459 | ADDRESS: |
| BBO: Simons (688665), Dahrooge (709087) | BBO: |

IN THE ESSEX SUPERIOR COURT FILED 8/10/3 2026 THOMAS H. DRISCOLL CLERK OF COURTS

**TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B04 | Other Negligence | F | [X] YES [ ] NO |

***If "Other" please describe:** sexual abuse, neglect, sexual harassment in education, violations of Title IX, violations of ADA

**Is there a claim under G.L. c. 93A?** [ ] YES [X] NO

**Is there a class action under Mass. R. Civ. P. 23?** [ ] YES [X] NO

**STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

**TORT CLAIMS**

A. Documented medical expenses to date

| | |
|---|---|
| 1. Total hospital expenses | $50,000+ |
| 2. Total doctor expenses | $50,000+ |
| 3. Total chiropractic expenses | 0 |
| 4. Total physical therapy expenses | 0 |
| 5. Total other expenses (describe below) | $50,000+ |
| trauma therapy and mental health services | |
| Subtotal (1-5): | $150,000+ |
| B. Documented lost wages and compensation to date | 0 |
| C. Documented property damages to date | 0 |
| D. Reasonably anticipated future medical and hospital expenses | $50,000+ |
| E. Reasonably anticipated lost wages | 0 |
| F. Other documented items of damages (describe below) | $1,000,000+ |
| pain and sufferin, mental anguish, emotional distress | |
| TOTAL (A-F): | $1,500,000+ |

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

John Doe suffered significant pain and suffering, mental anguish and emotional distress. See Complaint for full description of injuries.

**CONTRACT CLAIMS**

[ ] This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

Signature of Attorney/Self-Represented Plaintiff: X [signature] Date: 7/30/26

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION UNDER S.J.C. RULE 1:18(5)**

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney: X [signature] Date: 7/30/26

# 2677CV00980 Jane Doe As Parent and Next Friend John Doe vs. Town of Nahant

- Case Type:
- Torts
- Case Status:
- Open
- File Date
- 08/03/2026
- DCM Track:
- F - Fast Track
- Initiating Action:
- Other Negligence - Personal Injury / Property Damage
- Status Date:
- 08/03/2026
- Case Judge:
-
- Next Event:
-

All Information | Party | Tickler | Docket | Disposition

## Party Information

**Doe, Jane**
- Plaintiff

Alias

**Party Attorney**
- Attorney
- Dahrooge, Esq., Jillian J
- Bar Code
- 709087
- Address
- Fogelman Law Firm
  7 Wells Ave
  Suite 23
  Newton, MA 02459
- Phone Number
- (617)393-7603
- Attorney
- Simons, Esq., Jeffrey
- Bar Code
- 688665
- Address
- Fogelman Law LLC
  7 Wells Ave
  Suite 23
  Newton, MA 02459
- Phone Number
- (617)559-1530

More Party Information

**Town of Nahant**
- Defendant

Alias

**Party Attorney**

More Party Information

## Ticklers

| Tickler | Start Date | Due Date | Days Due | Completed Date |
|---|---|---|---|---|
| Service | 08/03/2026 | 11/02/2026 | 91 | |
| Answer | 08/03/2026 | 12/01/2026 | 120 | |
| Rule 12/19/20 Served By | 08/03/2026 | 12/01/2026 | 120 | |
| Rule 12/19/20 Filed By | 08/03/2026 | 12/31/2026 | 150 | |

| Tickler | Start Date | Due Date | Days Due | Completed Date |
| --- | --- | --- | --- | --- |
| Rule 12/19/20 Heard By | 08/03/2026 | 02/01/2027 | 182 | |
| Rule 15 Served By | 08/03/2026 | 12/01/2026 | 120 | |
| Rule 15 Filed By | 08/03/2026 | 12/31/2026 | 150 | |
| Rule 15 Heard By | 08/03/2026 | 02/01/2027 | 182 | |
| Discovery | 08/03/2026 | 06/01/2027 | 302 | |
| Rule 56 Served By | 08/03/2026 | 06/29/2027 | 330 | |
| Rule 56 Filed By | 08/03/2026 | 07/29/2027 | 360 | |
| Final Pre-Trial Conference | 08/03/2026 | 11/26/2027 | 480 | |
| Judgment | 08/03/2026 | 08/02/2028 | 730 | |

## Docket Information

| Docket Date | *Docket Text* | File Ref Nbr. | *Image Avail.* |
| --- | --- | --- | --- |
| 08/03/2026 | Attorney appearance<br>On this date Jeffrey Simons, Esq. added for Plaintiff Jane Doe | | |
| 08/03/2026 | Attorney appearance<br>On this date Jillian J Dahrooge, Esq. added for Plaintiff Jane Doe | | |
| 08/03/2026 | Case assigned to:<br>DCM Track F - Fast Track was added on 08/03/2026 | | Image |
| 08/03/2026 | Original civil complaint and jury demand filed. | 1 | Image |
| 08/03/2026 | Civil action cover sheet filed. | 2 | Image |
| 08/03/2026 | Demand for jury trial entered. | | |
| 08/03/2026 | Plaintiff Jane Doe As Parent and Next Friend John Doe's Motion for Appointment of Special Process Server | 3 | Image |
| 08/04/2026 | Plaintiff Jane Doe As Parent and Next Friend John Doe's Motion for impoundment | 4 | Image |
| 08/04/2026 | Plaintiff Jane Doe As Parent and Next Friend John Doe's Motion to Proceed in Pseudonym | 5 | |
| 08/04/2026 | Affidavit filed by Plaintiff Jane Doe As Parent and Next Friend John Doe in support of Motion to Proceed in Pseudonym | 5.1 | |
| 08/04/2026 | Docket Note: Mailed (1) Summons to Plaintiff's attorney | | |
| 08/05/2026 | Endorsement on Motion for Appointment of Special Process Server (#3.0): ALLOWED<br>Motion Allowed. Attest: Jose Mejia, Assistant Clerk | | Image |
| 08/05/2026 | Endorsement on Motion for impoundment (#4.0): ALLOWED<br>Upon Review Motion is ALLOWED | | Image |
| 08/05/2026 | Endorsement on Motion to Proceed in Pseudonym (#5.0): ALLOWED<br>Upon Review Motion is ALLOWED<br><br>Judge: McCarthy-Neyman, Hon. Kathleen | | |
| 08/05/2026 | ORDER: Order Pursuant to Uniform Rules on Impoundment Procedure, Rule 8<br>So Ordered 8/5/2026 Order Shall Expire on 8/5/2066 | 6 | Image |

## Case Disposition

| Disposition | Date | Case Judge |
| --- | --- | --- |
| Pending | | |